```
            UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

**United States of America**

                                                Case No. 16-cr-148-PB

    v.                                   Opinion No. 2021 DNH 006

**Jordan Manning**

### MEMORANDUM AND ORDER

Defendant Jordan Manning moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), as amended by Section 603(b)(1) of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239. For the following reasons, I deny Manning's motion.

## I.   STANDARD OF REVIEW

Following its amendment by the First Step Act, the compassionate release statute, codified as Section 3582(c)(1)(A), provides that

> the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in . . . [18 U.S.C. §] 3553(a) [("Section 3553(a)")] to the extent that they are applicable . . . .

§ 3582(c)(1)(A). The court may reduce a defendant's prison sentence if it finds that "extraordinary and compelling reasons

warrant such a reduction," id. § 3582(c)(1)(A)(i), and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A).

The Sentencing Commission's policy statement ("the policy statement"), which was promulgated prior to the passage of the First Step Act, provides as follows:

> Upon motion of the Director of the [BOP] under [Section 3582(c)(1)(A)], the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in [Section 3553(a)], to the extent that they are applicable, the court determines that —
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 (U.S. Sentencing Comm'n 2018). The commentary to the policy statement further explains what is meant by "extraordinary and compelling reasons." It states, in relevant part, that "[p]rovided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist," USSG § 1B1.13 cmt.

2

n.1, when "[t]he defendant is . . . suffering from a serious physical or medical condition," id. § 1B1.13 cmt. n.1(A)(ii)(I).

District courts are divided on whether the policy statement remains binding following the enactment of the First Step Act. Cf. United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) (collecting cases). I am not aware of any court that has chosen to disregard the policy statement entirely. I conclude, instead, that it "provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change." Id. at *3.

## II.   BACKGROUND

In 2017, Manning pleaded guilty to unlawful possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). See Def.'s Mot. for Compassionate Release, Doc. No. 34 at 1. Manning was arrested on a state probation violation for possession of over 100 grams of heroin. Gov't's Objection to Def.'s Mot. for Release, Doc. No. 35 at 5-6. The defendant told law enforcement that he acquired 200 grams of heroin daily from a source in Massachusetts which he would then sell to customers in New Hampshire. Id. at 6.

Manning's previous criminal activity was also serious and extensive. It included convictions for drug trafficking and

possession, as well as counterfeiting and bail jumping.  Doc. No. 35 at 6.  Additionally, Manning has multiple parole, probation, and supervised release violations.  Id.  Due to Manning's extensive criminal history, I sentenced him to a term of imprisonment of 96 months, a term significantly below the federal sentencing guideline recommendations at the time of his sentencing (120-150 months).  Id.  He has served approximately 39 months of his sentence.  See id. at 1.

Manning is currently incarcerated at Federal Correctional Institution ("FCI") Berlin, New Hampshire.  See Doc. No. 34 at 4.  The BOP has developed and implemented a multi-point plan to address the COVID-19 pandemic.  See Doc. No. 35 at 4-5.  Under the plan, the BOP has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, introduced face mask distribution to intimates, and suspended visitation and tours, among other measures.[1]  According to the BOP's website, as of January 8, there were zero active cases of COVID-19 in the inmate population and five active cases among staff at this facility.[2]

---

[1] *BOP Modified Operations*, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 8, 2021).
[2] *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited Jan. 8, 2021).

Manning is thirty years old and is severely obese, with a body mass index ("BMI") of 42.[3]  See Doc. No. 34 at 4; Appendix to Def.'s Mot. for Compassionate Release at 2.  Manning submitted a request for compassionate release to the BOP on July 20, 2020.  See Doc. No. 34 at 8.  After the BOP denied his request on July 29, he filed a pro se motion for compassionate release on November 9.  See id.; Def.'s Mot. for Compassionate Release, Doc. No. 32.  After counsel was assigned to Manning on November 29, see Doc. 33, this motion for compassionate release was filed on December 10, requesting a reduction in his sentence to allow for his immediate release.  See Doc. No. 34 at 1.  I held a hearing on the motion on December 30, 2020.

### III. DISCUSSION

Manning argues that I should order his release because his severe obesity places him at a high risk of severe illness for COVID-19, and a reduction of his sentence would not undermine Section 3553(a)'s sentencing factors.  See Doc. No. 34 at 10-17.  The government opposes Manning's motion.  See Doc. No. 35.  Because Manning waited 30 days before filing his pro se motion for compassionate release, Manning has exhausted his

---

[3] An obese BMI is one over 30.0 and a severely obese BMI is one over 40.0.  *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 8, 2021).

administrative rights, and so his motion is properly before me under Section 3582(c)(1)(A).

Manning has met his burden of demonstrating that "extraordinary and compelling reasons" exist that would render him eligible for compassionate release, as conceded by the government.  See § 3582(c)(1)(A); Doc. No. 35 at 1.  According to the Centers for Disease Control and Prevention ("CDC"), severe obesity places individuals at an increased risk for severe illness if they contract COVID-19.[4]  On similar facts, other district courts have found that severe obesity justifies a finding of an "extraordinary and compelling reason."  Compare United States v. Delgado, 457 F. Supp. 3d 85, 89-90 (D. Conn. 2020) (BMI of 40 during COVID-19 pandemic constitutes extraordinary and compelling circumstances due to "high risk for serious complications") and United States v. Dawson, No. 18-40085-HLT, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (finding extraordinary and compelling circumstances during COVID-19 pandemic where defendant's BMI of 51.5 "puts him at an increased risk of developing serious illness if he were to become infected with COVID-19"), with United States v. German, 2020 DNH 172, 2020 WL 5849530, at *2 (D.N.H. Oct. 1, 2020) (German's BMI of 36 did not qualify as "severe obesity" and

---

[4] Id.

therefore did not "significantly increase[] the relative risk of death or serious illness from COVID-19").  Fortunately, the current risk of contracting the virus at the institution where Manning is incarcerated is low.  The BOP has a mitigation plan in place that appears largely successful in controlling the spread of the virus at FCI Berlin, given that there are currently only five confirmed cases of active COVID-19 at the facility.[5]  Nevertheless, I accept, as the government concedes, that Manning's severe obesity increases his relative risk of COVID-19-related complications.

However, I must also consider the sentencing factors under Section 3553(a).  See § 3582(c)(1)(A).  The factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See

---

[5] As I have previously stated, I acknowledge that confirmed cases are different from the number of actual cases.  See United States v. Amarrah, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020) ("Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease.").  However, Manning does not challenge this statistic and has presented no evidence that the reported number of cases substantially under-reports the actual number of cases in the facility.

§ 3553(a). These factors do not support Manning's early release.

There is no doubt that Manning committed a serious crime. He was involved in the distribution of 100 grams of a large quantity of a dangerous drug that he intended to distribute to other people in the state. This crime occurred while he was on probation for a state crime. The sentence I originally imposed reflected the serious nature of Manning's offense and was well below the federal sentencing guidelines at the time. Reducing that sentence, particularly after less than half of the sentence has been served, would not be consistent with the goals of sentencing, including promoting respect for the law, providing just punishment, deterring further criminal conduct, and protecting the public. Accordingly, I conclude that the interests of justice would not be served if his sentence were reduced.

I recognize that Manning has made some efforts to rehabilitate himself during his incarceration. He has completed several courses while incarcerated, including courses in electrical work, mathematics, man-made disasters, critical thinking, and construction trades, he has earned his GED, and he is currently enrolled in a wellness class and weatherization class. See Doc. No. 34 at 4. However, he has struggled with disciplinary infractions during his incarceration, accumulating

8

eleven disciplinary infractions, including six "100 level" infractions, the most serious infractions in BOP facilities. In 2020 alone, he has had seven infractions ranging from possession of drugs, possession of cigarettes, possession of a makeshift bladder to circumvent drug testing, possession of a non-hazardous tool, refusing to obey an order, and twice refusing drug and alcohol testing. See Doc. No. 35 at 6. These infractions demonstrate that he remains a risk to himself and the community. They also raise doubts about his ability to successfully transition to supervised release, because he has not done substantial work to address his drug addiction.

Manning's sentence remains no greater than necessary to achieve the purposes of the sentencing statute. Consideration of Section 3553(a)'s factors, therefore, weighs against granting any reduction in Manning's sentence.

## IV.  CONCLUSION

For the foregoing reasons, Manning's motions for compassionate release (Doc. Nos. 32 and 34) are denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 8, 2021

cc: Jennifer Cole Davis, Esq.
    James B. Reis, Esq.
    U.S. Marshal
    U.S. Probation

9